USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

JORGE ARAUJO-CORTES,

                 Petitioner,

    -against-

CHRISTOPHER SHANAHAN, in his official
capacity as New York Field Office Director
for U.S. Immigration and Customs
Enforcement, *et al.*

                 Respondents.

-------------------------------------------------------------- x

**ORDER AND OPINION
GRANTING PETITION
FOR HABEAS CORPUS
AND DIRECTING
RESPONDENTS TO
PROVIDE PETITIONER
WITH AN
INDIVIDUALIZED BOND
HEARING**

14 Civ. 4231 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

        On January 30, 2014, Petitioner Jorge Araujo-Cortes, a lawful permanent resident

of the United States and a citizen and national of Colombia, was arrested by immigration

officials and put in immigration detention, based on an April 2009 conviction for which he was

not sentenced to prison.

        His requests for a release on bond have been denied because the government

maintains that he is subject to mandatory detention under 8 U.S.C. § 1226(c), which provides

that the Attorney General "shall take into custody an alien who is deportable by reason of having

committed [certain specific offenses] when the alien is released . . . for the same offense." As a

result, he has been in detention for over six months without any hearing to determine whether his

detention is appropriate or necessary.

        Araujo-Cortes filed the instant petition, challenging the government's refusal to

release him on bond. He argues that he is not subject to mandatory detention pursuant to §

1226(c) because he was placed in detention, not "when [he was] . . . released," but more than

five years after his underlying conviction. He also argues that holding him in prolonged

detention without a bond hearing violates his constitutional right not to be deprived of liberty

without due process.

1

For the following reasons, I conclude that Congress did not intend the mandatory detention provision of § 1226(c) to apply to individuals plucked out of the communities they have reintegrated into. I also conclude that the continued detention of Araujo-Cortes without an individualized hearing to determine whether he is a flight risk or a danger to the community is inconsistent with the United States Constitution. Accordingly, Araujo-Cortes' petition is granted and the Respondents are ordered to provide a bond hearing with regard to Araujo-Cortes' continuing detention.

## BACKGROUND

Araujo-Cortes was born in Colombia on November 9, 1984. A year later, his parents brought him to the United States. He was raised in the United States as an undocumented immigrant, completing elementary, middle and high school here.

In 2004, Araujo-Cortes was arrested by the New York Police Department on attempted robbery charges. He was never convicted of these charges, but as a result of his arrest he came to the immigration authorities' attention and was placed in removal proceedings based on his presence in the United States without lawful admission. These removal proceedings terminated in Araujo-Cortes' favor on February 28, 2008 when Immigration Judge ("IJ") Page granted him cancellation of removal. *See* 8 U.S.C. § 1229b(b) (providing that certain non-citizens who have maintained a continuous presence in the United States are eligible for cancellation of removal where that removal would result in "exceptional and extremely unusual hardship" to a qualifying relative). It appears that Araujo-Cortes received cancellation of removal because of the hardship his removal would cause to his father, who was battling gastric cancer at the time. By virtue of receiving cancellation of removal, Araujo-Cortes became a lawful permanent resident. *See* Gov't Ex. 1.

2

Araujo-Cortes' father has since died. But his mother and younger brother, who is a United States citizen, remain in the United States. Since his father's death, Araujo-Cortes has provided for them financially. Additionally, Araujo-Cortes has started his own family in America: his son, a United States citizen, was born on May 15, 2008. Although Araujo-Cortes does not live with his son's mother, he shares parenting responsibilities.

On April 28, 2009, Araujo-Cortes was convicted for Criminal Possession of a Weapon in the Fourth Degree, a misdemeanor in violation of N.Y.P.L. § 265.01. He was sentenced to a three-year term of probation for this conviction.[1] On June 9, 2012, Araujo-Cortes successfully completed his probation.

On January 30, 2014 (nearly five years after his April 2009 conviction), Araujo-Cortes was arrested by Immigration and Customs Enforcement ("ICE") officials in New York City. At the time of his arrest, ICE served him with a Notice of Removability dated December 16, 2013, charging him with removability from the United States under 8 U.S.C. § 1227(a)(2)(C). That section provides that a non-citizen who, after admission to the United States, was convicted "under any law of . . . possessing . . . any weapon, part, or accessory which is a firearm" is removable. The Notice of Removability referenced Araujo-Cortes' April 2009 conviction. The Notice of Removability is a charging document that begins removal proceedings against Araujo-Cortes. The removal proceedings are pending before IJ Page, the same IJ who

---

[1]     Since that time, Araujo-Cortes has received other convictions. He has pled guilty to disorderly conduct, in violation of N.Y.P.L. § 240.20, four times: in July 2011, twice in May 2012, and in March 2013. For each of these misdemeanors he was sentenced to community service. Additionally, he pleaded guilty to driving while intoxicated, in violation of N.Y. V.T.L. § 1192.1, in September 2010 and to unlicensed driving and driving while intoxicated, in violation of N.Y. V.T.L. §§ 509.1 and 1192.1, in April 2014. These other convictions are not relevant to Araujo-Cortes' immigration detention at this time because Araujo-Cortes has not been charged with removability based on them.

3

had presided over his 2004 to 2008 removal proceedings, in New York City's Immigration Court.

Immediately following his arrest, Araujo-Cortes was placed in immigration detention in a facility in New Jersey. ICE determined that he was subject to mandatory detention under 8 U.S.C. § 1226(c) and therefore ineligible for a bond. On June 5, 2014, Araujo-Cortes applied to an IJ for release from immigration detention on a bond. The IJ denied his application for a bond determination based on the mandatory detention provision of 8 U.S.C. § 1226(c), and the BIA's decision in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001), which held that the mandatory detention statute applies to non-citizens regardless of when they were placed in immigration detention.

On June 6, 2014, the IJ determined that Araujo-Cortes was removable, *i.e.* that the government had established that he was convicted "under any law of . . . possessing . . . any weapon, part, or accessory which is a firearm." The IJ adjourned Araujo-Cortes' case until August 6, 2014, to consider his eligibility for relief from removal. At that time, the IJ stated that he had requested the record from Araujo-Cortes' previous removal proceedings. Araujo-Cortes also wants those records, because they may contain information supportive of his application for cancellation or other relief from removal.

On June 11, 2014, Araujo-Cortes was temporarily brought to an immigration detention center in New York City. While in New York City, Araujo-Cortes filed the instant petition for a writ of habeas corpus. He requests an order directing the Respondents, various government officials responsible for his detention, to release him on bond or to hold an individualized bond hearing.

Araujo-Cortes has now been in detention for over six months.

4

## DISCUSSION

### I.     Jurisdiction

As the government concedes,[2] this Court has jurisdiction over Araujo-Cortes'

petition for a writ of Habeas Corpus pursuant to 28 U.S.C. §§ 2241 and 1331, based on Araujo-

Cortes' presence in the Southern District of New York when this petition was filed. *See*

*Louisaire v. Muller*, 758 F. Supp. 2d 229, 233 (S.D.N.Y. 2010) (habeas petition filed during

petitioner's presence in New York, court continued to exercise review over petitioner's detention

where the government transferred petitioner to detention in New Jersey).

The Immigration and Nationality Act precludes review of the Attorney General's

"discretionary judgment" with regard to the detention or release of any non-citizen. 8 U.S.C. §

1226(e).  That statute, however, does not deprive courts of jurisdiction to conduct a habeas

review based on an interpretation of the statutory framework governing immigration detention.

*See Demore v. Kim*, 538 U.S. 510, 517 (2003); *Garcia v. Shanahan,* 615 F.Supp.2d 175, 179

(S.D.N.Y. 2009).

### II.     Exhaustion of Administrative Remedies

There is no statutory requirement that a habeas petitioner exhaust his

administrative remedies before challenging his immigration detention.  Since Congress is silent

---

[2]     *See* July 14, 2014 Letter from Hon. Preet Bharara (Doc. No. 9) withdrawing the
government's jurisdictional arguments.

While conceding that this petition was properly filed in this Court, the government
characterizes Araujo-Cortes' decision to proceed here as improper forum shopping.  I reject this
characterization.  Before his detention, Araujo-Cortes lived in New York; he was arrested by ICE
officials in New York; the government invokes mandatory detention based on a New York
conviction; his removal proceedings are being conducted by an IJ based in New York; and the
ICE Field Office responsible for overseeing his detention is based in New York. *See Farez-
Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 496 (S.D.N.Y. 2009) (rejecting forum shopping
arguments and concluding that this district was the proper venue for a challenge to non-citizen's
immigration detention because "[t]he key events and circumstances leading to [her] detention
and petition took place in this district").

on the issue, courts have applied a judicially created requirement that, generally, a petitioner must exhaust his administrative remedies before seeking federal court intervention. *See Monestime v. Reilly*, 704 F. Supp. 2d 453, 456 (S.D.N.Y. 2010) ("A habeas petitioner generally must exhaust administrative remedies before seeking federal court intervention.").[3]  In this case, Araujo-Cortes sought a bond hearing before an IJ.  The IJ denied his application, invoking the mandatory detention statute.  Araujo-Cortes can appeal that decision to the BIA. *See* 8 C.F.R. §§ 1003.1(b)(7), 1003.19(f), 1003.38.  Thus, he has not exhausted his administrative remedies.

However, courts may waive a judicially created exhaustion requirement where pursuing administrative remedies would be futile or where the agency has predetermined the issue before it. *Monestime*, 704 F. Supp. 2d at 456 ("[E]xhaustion is not required where it would be futile or where the agency has predetermined the issue before it."); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.").

In this case, it would be futile for Araujo-Cortes to appeal to the BIA in order to raise his statutory and constitutional arguments.  The BIA has already rejected Araujo-Cortes' statutory arguments, holding that a non-citizen who, like Araujo-Cortes, was not taken into detention "when . . . released" is subject nevertheless subject to mandatory detention under § 1226(c). *See Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001) (holding that 8 U.S.C. § 1226(c)'s mandatory detention provision applies regardless of how long ago an immigrant was released from criminal custody for a removable offense).  The BIA considers that decision

---

3       *See also Garcia*, 615 F. Supp. 2d at 179 ("[I]t is a matter of the Court's discretion whether a petitioner [challenging immigration detention] must exhaust his administrative remedies before applying for relief in federal court."); *Sulayao v. Shanahan*, 09 Civ. 7347 (PKC), 2009 WL 3003188, at *3 (S.D.N.Y. Sept. 15, 2009).

binding and has declined repeatedly to reconsider it. *See, e.g., In Re Verner Alfonso Larios-Garcia*, No. A040 138 097, 2011 WL 1570472, at *1 n.2 (BIA Mar. 30, 2011) (unpublished) ("[W]e find respondent's invitation to revisit our holding in *Matter of Rojas* . . . to be unpersuasive."); *Matter of Garcia Arreola*, 25 I. & N. Dec. 267, 271 n.4 (BIA 2010) ("We therefore do not recede from *Matter of Rojas* . . . .").

It would also be futile for Araujo-Cortes to raise his constitutional argument that application of the mandatory detention statute to him violates the Due Process clause before the BIA as the BIA "does not have jurisdiction to adjudicate constitutional issues," *United States v. Gonzalez-Roque*, 301 F.3d 39, 48 (2d Cir. 2002), and Araujo-Cortes' constitutional claim is not predicated on procedural errors which could be corrected by the BIA, *cf. id.*

Additionally, requiring Araujo-Cortes to appeal to the BIA before I adjudicate his habeas petition would have the effect of prolonging his detention without the possibility of an application for a bond hearing. This is the very harm that Araujo-Cortes is trying to avoid.

Accordingly, it is appropriate for the Court to review the lawfulness of Araujo-Cortes' detention at this time, notwithstanding the fact that he has not completely exhausted his administrative remedies.

## III.    Habeas Relief

To obtain habeas relief pursuant to 28 U.S.C. § 2241, a petitioner must demonstrate that he is being detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In this case, Araujo-Cortes does not contest the Respondents' authority to detain him pursuant to 8 U.S.C. § 1226(a). His argument is that his continued detention, without a hearing to determine if he will attend all court dates and not be a danger of the community, violates federal law and his constitutional rights.

7

## IV.    Araujo-Cortes' Statutory Argument

Araujo-Cortes argues that he is entitled to a bond hearing because he is not subject to mandatory detention under § 1226(c).

### A.    Statutory Framework

In the Immigration and Nationality Act ("INA"), as amended, Congress has authorized two types of immigration detention during the pendency of removal proceedings. Generally, immigration detention is authorized by 8 U.S.C. 1226(a), which provides the Attorney General with discretion over whether to detain non-citizens or release them on a bond or conditional parole. *See* 8 U.S.C. § 1226(a)(1), (2).

Congress has also created a system of mandatory detention for certain classes of non-citizens. Section 1226(c) provides for the mandatory detention of so-called "criminal aliens." In adopting § 1226(c), Congress concluded that "discretionary release of non-citizens pending their removal hearings would lead to large numbers of deportable criminal non-citizens skipping their hearings and remaining at large in the United States unlawfully." *Demore v. Kim*, 538 U.S. 510, 528 (2003).

Section 1226(c)(1) provides, in relevant part, that:

> The Attorney General shall take into custody any alien who [is removable on the basis of having committed certain criminal offenses], when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).

The Attorney General may release a § 1226(c)(1) detainee at the termination of his custody only under limited circumstances. *See* 8 U.S.C. § 1226(c)(2) (providing for release related to the non-citizen's cooperation with a criminal investigation or status as a material witness). Generally speaking the statutory framework provides that a non-citizen, in custody

8

because of a prescribed criminal offense, must continue to be detained by the Attorney General while removal proceedings are pursued, without entitlement to a bond hearing, or release to society pursuant to such a bond hearing. But, as discussed below, federal courts across the country have concluded that a non-citizen who is subjected to prolonged detention under § 1226(c) is entitled to an individualized bond hearing. *See Monestime*, 704 F. Supp. 2d at 459 (collecting cases).

## B. Section 1226(c)'s Applicability

Section 1226(c) provides that the Attorney General "shall take into custody an alien who is deportable by reason of having committed any [enumerated offense] when the alien is released . . . for the same offense." Here, Araujo-Cortes was not taken into immigration detention at the time he was released in April 2009, but five years later.[4] He therefore argues that since he was not taken into detention "when . . . released," he is not subject to mandatory detention.

The government argues that under the mandatory detention statute, it is irrelevant that Araujo-Cortes was not arrested "when. . . released." The government argues that under *Chevron v. NRDC*, 467 U.S. 837, 845 (1984), this court is bound by the BIA's interpretation of § 1226(c) in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001). In *Rojas*, the BIA concluded that § 1226(c)'s "when . . . released" clause described only the earliest point at which the government's

---

4  For purposes of this order, I assume *arguendo* that Araujo-Cortes was "release[d]" in April 2009 when he was sentenced to a three-year term of probation. Araujo-Cortes denies that he was released at all, since he was never taken into custody as a result of his criminal sentence. I note that Araujo-Cortes' position is supported by this Court's decision in *Masih v. Aviles*, 14 CIV. 0928 JCF, 2014 WL 2106497, at *2-4 (S.D.N.Y. May 20, 2014), which held that a non-citizen who has never been subjected to physical custody as a result of a conviction, has not been "release[d]" and is therefore not subject to mandatory detention under § 1226(c). I do not consider the issue now though because I rule that Araujo-Cortes is not subject to mandatory detention on other grounds.

9

duty to detain certain non-citizens could arise and that the timing of a non-citizen's detention did not affect whether the non-citizen is subject to mandatory detention. *Id.* at 121-22.

*Chevron* requires a two-step analysis. *See Nwozuzu v. Holder*, 726 F.3d 323, 327 (2d Cir. 2013). Under the first step, I must first determine "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* at 843 n. 9. "If the intent of Congress is clear, that is the end of the matter . . . ." *Id.* at 842. If, however, there is ambiguity, I must defer to the BIA's interpretation of the statute if that interpretation is reasonable. *Id.* at 843.

### C. *Chevron* Step One – § 1226(c) is Unambiguous

The government's argument fails at *Chevron* step one. As the majority of courts to consider this issue have concluded, the traditional tools of statutory construction—an examination of the INA's language, context and structure—indicate that Congress spoke clearly and unambiguously on this issue through the structure of the immigration detention scheme and Congress' use of the "when . . . released" clause in § 1226(c)(1). *See Louisaire*, 758 F. Supp. 2d at 236 (McMahon, J.) ("A majority of courts that have examined this issue have held that the mandatory statute is unambiguous on this point.") (collecting cases).[5]

---

[5]    *See, e.g., Garcia*, 615 F.Supp.2d at 180–81 (McMahon, J.) ("For over a decade, courts analyzing § 1226(c) have consistently interpreted the statute to authorize the government to take an alien into custody on or about the time he is released from custody for the offense that renders him removable."); *Scarlett v. U.S. Dep't of Homeland Sec. Bureau of Immigration & Customs Enforcement*, 632 F.Supp.2d 214, 219–20 (W.D.N.Y. 2009) (collecting cases in which several district courts hold that § 1226(c) does not apply when the alien was not taken into immigration custody at the time of his release); *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1230 (W.D. Wash. 2004) (declining to defer to *Matter of Rojas*); *Lora v. Shanahan*, 14 Civ. 2140, 2014 WL 1673129 (S.D.N.Y. Apr. 29, 2014) (Peck, J.) (same); *Aparicio v. Muller*, No. 11 Civ. 437 (S.D.N.Y. Apr. 7, 2011) (Kaplan, J.) (same); *Jean v. Orsino,* No. 11 Civ. 3682 (S.D.N.Y. June 30, 2011) (Swain, J.) (same).

The immigration detention scheme created by Congress in § 1226 is structured around the following organizational principle: All non-citizens in removal proceedings may be detained, and certain non-citizens cannot be released from their detention. Section 1226(a) provides the Attorney General with the authority to detain non-citizens. Section 1226(c) then provides for the mandatory detention of a set of non-citizens in custody pursuant to the sentence of a criminal court. It does this in two paragraphs. Section 1226(c)(1) describes a class of non-citizens, and § 1226(c)(2) places limits on when those non-citizens may be released. Since § 1226(a) already authorizes immigration detention, the effect of § 1226(c) is not to give the Attorney General more *authority* to detain the group of non-citizens described in § 1226(c)(1). Rather, the effect of mandatory detention is to impose a limit on the Attorney General's discretion about whether to detain or release those non-citizens. One must read the statute with that structure in mind.

To analyze this statutory scheme, I begin with the language. Section 1226(c)(1) provides, in relevant part, that:

> The Attorney General shall take into custody any alien who [is removable on the basis of having committed certain criminal offenses], *when the alien is released*, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1) (emphasis added). The "when . . . released" clause follows the list of enumerated criminal offenses in 1226(a), indicating that the list modifies the "when . . . released"

---

I note, however, that a number of judges, including judges in this district, have rejected this argument. *See, e.g., Straker v. Jones*, 986 F. Supp. 2d 345 (S.D.N.Y. 2013) (Engelmayer, J.); *Santana v. Muller*, 12 CIV. 430 PAC, 2012 WL 951768 (S.D.N.Y. Mar. 21, 2012) (Crotty, J.); *Guillaume v. Muller*, 11 CIV. 8819 TPG, 2012 WL 383939 (S.D.N.Y. Feb. 7, 2012) (Griesa, J.); *Mendoza v. Muller*, 11 CIV. 7857 RJS, 2012 WL 252188 (S.D.N.Y. Jan. 25, 2012) (Sullivan, J.); *Gomez v. Napolitano*, 11 CIV. 1350 JSR, 2011 WL 2224768 (S.D.N.Y. May 31, 2011) (Rakoff, J.).

11

clause. Thus, the "when . . . released" clause means "when the alien is released" from custody

arising out of one of the enumerated criminal offenses. *See Saysana v. Gillen*, 590 F.3d 7, 14

(1st Cir. 2009) ("the 'when released' language applies to an alien who has been detained

criminally for one of the listed activities"). Accordingly, § 1226(c)(1), when read as a whole,

provides that the Attorney General shall take into immigration detention any non-citizen who is

removable as a result of having committed one of the enumerated offenses "when the alien is

released" from a custody related to one of those offenses.

> Section 1226(c)(2) provides:
>
> The Attorney General may release an alien described in paragraph
> (1) only if the Attorney General decides pursuant to section 3521 of
> title 18 that release of the alien from custody is necessary to provide
> protection to a witness, a potential witness, a person cooperating
> with an investigation into major criminal activity, or an immediate
> family member or close associate of a witness, potential witness, or
> person cooperating with such an investigation, and the alien satisfies
> the Attorney General that the alien will not pose a danger to the
> safety of other persons or of property and is likely to appear for any
> scheduled proceeding. A decision relating to such release shall take
> place in accordance with a procedure that considers the severity of
> the offense committed by the alien.

8 U.S.C. § 1226(c)(2). Section 1226(c)(2) thus places limits on when the government may

release "alien[s] described in § 1226(c)(1). It does not provide for the arrest and detention of an

alien who is not in custody.

The question before me is whether § 1226(c)(2) applies to a non-citizen who has

committed one of the enumerated offenses, but was not taken into immigration custody "when . .

. released." This requires me to address whether § 1226(c)(2)'s phrase "alien described" refers

to (1) only the first part of § 1226(c)(1)—*i. e.*, any non-citizen who is removable on the basis of

having committed one of the enumerated criminal offenses—or (2) the whole of § 1226(c)(1),

including the "when . . . released clause"—*i.e.*, any non-citizen who is removable on the basis of

12

having committed one of the enumerated criminal offenses and who was taken into immigration detention "when . . . released."

The latter reading is more natural, because it gives effect to the whole of § 1226(c)(1). However, in *Matter of Rojas*, the BIA adopted the former reading, and concluded that § 1226(c) required the mandatory detention of any non-citizen who is removable on the basis of having committed one of the enumerated criminal offenses, regardless of when the non-citizen was taken into immigration detention. 23 I. & N. Dec. 117. That reading violates the cardinal rules of statutory interpretation: as it renders the "when . . . released" clause superfluous by giving the clause no meaning. *See Castaneda v. Souza*, 952 F. Supp. 2d 307, 313-14 (D. Mass. 2013).

The BIA explained its decision by stating that "Congress was not simply concerned with detaining and removing aliens coming directly out of criminal custody; it was concerned with detaining and removing all criminal aliens." *Matter of Rojas*, 23 I. & N. Dec. at 122. However, *Matter of Rojas*'s conclusion that the "when . . . released" clause was not an important part of the statutory scheme is belied by the structure of the statute.

The structure of § 1226(c) shows that Congress had a clear policy in mind. By including the "when . . . released" clause, Congress indicated that it wanted criminal non-citizens to be placed into immigration detention and removal proceedings *immediately* upon their release from criminal custody arising from their crimes, before the non-citizen returns to their community. *See Louisaire*, 758 F. Supp. 2d at 236 ("The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed [certain enumerated] offenses . . . *immediately* upon their release from criminal sentences for those same offenses, even if they are still serving part of their sentence out in the community, under parole, supervised release, or probation." (emphasis in original)). At the time § 1226(c) was enacted, Congress

13

knew that the immigration enforcement agencies could use immigration detainers, *see* 8 C.F.R. §

287.7, to ensure that any non-citizen they were interested in would be *immediately* taken into

immigration detention following their release from state or federal criminal custody.  Thus, the

"when . . . released" clause indicates that § 1226(c) was intended to apply to non-citizens who

are immediately transferred into immigration detention.

By including the "when . . . released" clause, Congress plainly intended that there

be a connection between the timing of a non-citizen's release and when the non-citizen is taken

into custody.  *See Garcia*, 615 F.Supp. 2d at 182.  If Congress had not intended to condition

mandatory detention on whether a non-citizen is placed in immigration detention "when . . .

released," it could have used other language to accomplish its statutory scheme.  For example,

Congress "could easily have used the language 'after the alien is released,' 'regardless of when

the alien is released,' or other words to that effect" in order to provide that criminal non-citizens

can be detained at any time.  *Quezada–Bucio*, 317 F.Supp.2d at 1224.  "Instead Congress chose

to use the word 'when,' which connotes a different meaning."  *Id.*  Similarly, Congress could

have omitted the "when . . . released clause" in order to create a scheme of mandatory detention

of criminal non-citizens regardless of when they are placed in detention.  *See* 8 U.S.C. §

1226A(a) (requiring the detention of certain non-citizens designated as terrorists without a "when

. . . released" clause).

In sum, the language, context and structure of § 1226(c)—"the traditional tools of

statutory interpretation," *Chevron*, 467 U.S. at 843 n. 9—clearly indicate that Congress intended

for the statute to provide for the mandatory detention of only those criminal non-citizens who are

taken into immigration detention immediately "when . . . released" from custody.  They indicate

that Congress intended for § 1226(c)(2)'s phrase "alien described" to be read as a reference to

the whole of § 1226(c)(1), including the "when . . . released" clause.  The statute is therefore, for

14

purposes of *Chevron*, unambiguous. *See Adams v. Holder*, 692 F.3d 91, 100 (2d Cir. 2012) (finding statutory provision unambiguous for purposes of *Chevron* because the "INA's text, structure, and history" all indicated Congress' intent).

### D. *Hosh* and *Sylvain*

A minority of courts have held that ICE's failure to detain a non-citizen "when . . . release[d]: from custody has no effect on the ability of ICE to release him from detention, even after he returns to the community. The government argues that I should follow two of those decisions in particular: *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012), and *Sylvain v. Att'y Gen.*, 714 F.3d 150 (3d Cir. 2013). I am not persuaded by these decisions.[6]

Both *Hosh* and *Sylvain* were based on the courts' conclusion that the government's delay in detaining noncitizens cannot affect the government's authority to detain them. *See Hosh*, 680 F.3d at 381-83; *Sylvain*, 714 F.3d at 157-60. This analysis is mistaken because it is premised on the Third and Fourth Circuits' treatment of § 1226(c) as a grant of authority to detain, rather than a limit on the Attorney General's ability to release non-citizens. However, since the government has the authority to detain non-citizens in removal proceedings under § 1226(a), there is no need to grant the government additional authority under § 1226(c). *See Castaneda*, 952 F. Supp. 2d at 318-19 (criticizing *Hosh* and *Sylvain*).

---

[6]    I am not the only judge unpersuaded by these decisions. *See, e.g., Baquera v. Longshore*, 948 F. Supp. 2d 1258, 1263-65 (D. Colo. 2013) (rejecting the reasoning of *Hosh* and *Sylvain*); *Deluis–Morelos v. ICE Field Office Director*, No. C12–1905–JLR, 2013 WL 1914390, at * 4–6 (W.D. Wash. May 8, 2013) (same); *Rosciszewski v. Adducci*, 983 F. Supp. 2d 910, 916 (E.D. Mich. 2013) (same); *Khoury v. Asher*, C13-1367RAJ, 2014 WL 954920 (W.D. Wash. Mar. 11, 2014) (same); *Castaneda*, 952 F. Supp. 2d at 315-17  (same); *Sanchez Gamino v. Holder*, CV 13-5234 RS, 2013 WL 6700046 (N.D. Cal. Dec. 19, 2013) (same); *Castillo v. ICE Field Office Dir.*, 907 F. Supp. 2d 1235, 1239 (W.D. Wash. 2012) (rejecting the reasoning of *Hosh*); *Bogarin-Flores v. Napolitano*, 12CV0399 JAH WMC, 2012 WL 3283287 (S.D. Cal. Aug. 10, 2012) (same).

In *Hosh*, the Fourth Circuit also found that § 1226(c) was ambiguous because it was unclear what the word "when" in the "when . . . released" clause meant. 680 F.3d at 379-80. The Fourth Circuit therefore stated that the statute was ambiguous and decided to give *Chevron* deference to the BIA's decision in *Matter of Rojas. Id.* This is a misapplication of *Chevron*, since the BIA's decision in *Matter of Rojas* did not construe the term "when." Rather, the BIA's decision was premised on its conclusion that the "when . . . released" clause did not modify the group of non-citizens described in § 1226(c)(2). *See Matter of Rojas*, 23 I. & N. Dec. at 125. [7]

In *Sylvain*, the Third Circuit did not "take a stand" on whether *Matter of Rojas* was entitled to *Chevron* deference. 714 F.3d at 157.

### E.  Section 1226(c) does not apply to Araujo-Cortes

As discussed above, the language, context and structure of the INA indicate that Congress intended that § 1226(c)(2)'s phrase "alien described" to be read as a reference to the whole of § 1226(c)(1), including the "when . . . released" clause. Accordingly, I join the majority of courts in concluding that Congress has clearly spoken on precisely this question. *See Louisaire*, 758 F. Supp. 2d at 236. Since Congress has clearly spoken on this issue, I reject *Matter of Rojas* and will not defer to it under *Chevron. See Chevron*, 467 U.S. at 843 n. 9.

In sum, mandatory detention under § 1226(c) applies only to non-citizens who have committed one of the enumerated criminal offenses and were taken into custody "when . . . released." The mandatory detention statutory scheme does not apply to individuals who were

---

[7]     In *Matter of Rojas*, the BIA took the position that the "when . . . released clause" in § 1226(c)(1) was an instruction to the government and that therefore it did not modify the category of non-citizens whose release is governed by § 1226(c)(2). *See Matter of Rojas*, 23 I. & N. Dec. at 125 ("We construe the phrasing 'an alien described in paragraph (1),' as including only those aliens described in subparagraphs (A) through (D) of section 236(c)(1), *and as not including the 'when released clause*." (emphasis added)). Since the BIA found that the "when . . . released" clause was irrelevant to the question of whether a non-citizen is subject to mandatory detention, it did not give any meaning to the word "when." Since the BIA did not give any meaning to the word "when," courts cannot give *Chevron* deference to the BIA's interpretation of that word.

16

not placed in detention "when . . . released" but were instead reintegrated into their community after their conviction. Because Araujo-Cortes was not placed in immigration detention at or around the time when he was released, he is not subject to mandatory detention. Therefore the government's reasons for denying Araujo-Cortes' request for a bond are invalid. Accordingly, he must be provided with a bond hearing.

## V.     Araujo-Cortes' Constitutional Arguments

Additionally, Araujo-Cortes argues that his detention without a bond hearing under § 1226(c) violates the due process clause of the Constitution. I agree.

The Fifth Amendment to the United States Constitution provides that "No person shall be . . . deprived of . . . liberty . . . without due process of law . . . ." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the due process clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Araujo-Cortes has been detained for six months without any process. The government maintains that his detention is justified by the fact that he is a criminal alien held pursuant to § 1226(c). However, unlike those aliens whom Congress expected to be detained under § 1226(c), Araujo-Cortes was not taken into immigration detention when released from prison; he was plucked out of the community where he had lived for almost five years following his conviction. Accordingly, for the following reasons I conclude that his continued detention without a hearing offends the Constitution.

### A. *Zadvydas* and *Demore*:

In *Zadvydas*, the Supreme Court heard a due process challenge to detention of aliens under 8 U.S.C. § 1231 (1994), which governed the detention of non-citizens following a final order of removal. Before the Court were two habeas petitioners—Kestutis Zadvydas and

17

Kim Ho Ma—who had been detained for months under § 1231, even though there was reason to think that neither of them could be removed from the United States.[8]

Zadvydas and Ma argued that their detention violated the due process clause of the Constitution. The Supreme Court noted that government detention violates the Due Process Clause, "unless the detention is ordered in a criminal proceeding with adequate procedural protections or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." 533 U.S. at 690 (citations and quotations omitted). The Court noted that immigration detention was a civil detention that performs two regulatory goals: "ensuring the appearance of aliens at future immigration proceedings" and "[p]reventing danger to the community." *Id.*

Confronted with two individuals who were faced with seemingly indefinite detention, the Supreme Court noted the Constitutional problems with such detention: there was a weak justification for continued detention of an alien whose removal is not foreseeable and the non-citizens had a strong liberty interest in being released from custody, subject to supervision. *See id.* at 690-96.

Because of the serious questions about the constitutionality of a statute that authorized indefinite detention, the Supreme Court invoked the canon of constitutional avoidance and concluded that § 1231 authorized the continued detention of a non-citizen following the 90–day removal period for only such time as is reasonably necessary to secure the non-citizen's

---

[8]     Zadvydas was a child of Lithuanian parents who was born in a German refugee camp. *Id.* at 684. His removal to either to either Germany or Lithuania was frustrated by both countries' refusal to recognize him as a citizen. *Id.* at 684-85. Ma was a native of Cambodia, who had grown up in the Philippines, Thailand and the United States. *Id.* at 685-86. His removal to Cambodia was frustrated by the lack of a repatriation agreement between the United States and Cambodia. *Id.* at 686.

18

removal. 533 U.S. at 699; *see also id.* at 682 ("Based on our conclusion that indefinite detention of aliens in the former category would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."). Recognizing the potential administrative problems associated with a case-by-case determination of whether detention was reasonably necessary, the Supreme Court further held—"for the sake of uniform administration in the federal courts"—that detention pursuant to § 1231 for up to six months after a removal order was presumptively reasonable. *Id.* at 700-01. The Supreme Court adopted this six month period because the Supreme Court expected that most removals could be completed within six months, and because the Supreme Court "ha[d] reason to believe . . . that Congress previously doubted the constitutionality of detention for more than six months." *Id.* at 701.

Accordingly, the Supreme Court held that after the six month period had expired, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the reasonably foreseeable future conversely would have to shrink." *Id.*

Two years after its decision in *Zadvydas*, the Supreme Court, in *Demore v. Kim*, 538 U.S. 510 (2003), considered the constitutionality of 8 U.S.C. § 1226(c)—the mandatory detention statute that the government has invoked to detain Araujo-Cortes. In *Demore*, the habeas petition was filed by Hyung Joon Kim, a non-citizen. Kim was taken into immigration detention in 1999, pursuant to 8 U.S.C. § 1226(c), when released from prison for having committed first-degree burglary and petty theft. *Demore*, 538 U.S. at 513 (majority opinion), 533 (O'Connor, J., concurring). In his habeas petition, Kim argued that his detention without a

19

hearing was inconsistent with the due process clause of the Constitution. A district court granted
Kim's habeas petition, and ordered that he receive a bond hearing—which led to his release from
immigration detention—after Kim had spent six months in immigration detention. *See id.* at
514-15, 531 (majority opinion). The Ninth Circuit affirmed.

The Supreme Court, in a majority opinion written by Chief Justice Rehnquist.
rejected Kim's arguments and reversed. The Supreme Court concluded that Kim's detention
without a bond hearing pursuant to § 1226(c) was permissible based on two points: first, that the
detention was justified by Congress' concerns about criminal aliens and, second, that the
detention typically was brief.

On the first point, the Supreme Court noted the extensive legislative history
behind § 1226(c) which indicated that Congress was concerned by the immigration authorities'
problems with deporting criminal aliens. *Id.* at 517-21. The Supreme Court observed that when
Congress enacted § 1226(c), it had considered studies indicating that many criminal aliens had
frustrated removal proceedings by failing to appear. *Id.* Thus, the Supreme Court observed that
in adopting § 1226(c), which required the mandatory detention of a subset of criminal aliens,
"Congress had before it evidence suggesting that permitting discretionary release of aliens
pending their removal hearings would lead to large numbers of deportable criminal aliens
skipping their hearings and remaining at large in the United States unlawfully." *Id.* at 526. The
Supreme Court explained that it was permissible for Congress, through § 1226(c), to create a
blanket rule of mandatory detention without hearings because the due process clause "does not
require [Congress] to employ the least burdensome means to accomplish its goal." *Id.* at 528.

20

In reaching the conclusion that Congress' concerns justified mandatory detention, the Supreme Court emphasized that detention under § 1226(c) is usually brief.[9] The Supreme Court distinguished *Zadvydas* by the unlimited detention in that case. *See id.* at 527-30. In making this distinction, the Supreme Court emphasized that, "[t]he detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 530. The Supreme Court noted that Kim "was detained for somewhat longer than the average—spending six months in INS custody," but attributed the length of that detention to Kim since he "had requested a continuance of his removal hearing." *Id.* at 530-31.

Justice Kennedy, whose vote was necessary to the majority opinion, wrote a concurring opinion expanding the Supreme Court's due process analysis. In that concurrence, Kennedy, made the following statement:

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons. . . . The Court's careful opinion is consistent with these premises, and I join it in full.

---

9    *Demore* is replete with references to the brevity of immigration detention under § 1226(c). *See, e.g., id.* at 523 (question is whether the government may "detain [respondent] for the brief period necessary for his removal proceedings."); *id.* at 526 (Court has held that the government may hold aliens "during the limited period necessary for their removal proceedings ..."); *id.* at 528 (detention in *Demore* of "much shorter duration" than the period at issue in *Zadvydas* ).

21

*Id.* at 532-33 (Kennedy, J., concurring) (citations omitted). Because Justice Kennedy did not

find that the length of Kim's detention was unreasonable, he did not find Kim's detention

without a bond hearing unconstitutional.

## B. Applying *Demore* and *Zadvydas*

*Demore* and *Zadvydas* teach that the United States Constitution applies to, and

limits, the immigration detention of non-citizens. *See Zadvydas*, 533 U.S. at 682, 699; *Demore*,

538 U.S. at 532-33 (Kennedy, J., concurring). The Supreme Court upheld detention of aliens

facing removal and removal proceedings, but placed constitutional limits on the length and

evaluation of such detention. *See Zadvydas*, 533 U.S. at 682, 699; *Demore*, 538 U.S. at 532-33

(Kennedy, J., concurring).

Following *Zadvydas* and *Demore*, federal courts have concluded, generally, that,

in order to avoid running afoul of the Due Process Clause, section 1226(c) implicitly limits

unreasonable and unjustified detention. *See Johnson v. Orsino*, 942 F. Supp. 2d 396, 408

(S.D.N.Y. 2013) (collecting cases).[10] I agree with those courts: reading § 1226(c) in a manner

that does not contain a reasonable limit would raise serious constitutional constitutions and

---

[10]     *See, e.g., Diop v. ICE/Homeland Sec.,* 656 F.3d 221, 231 (3rd Cir. 2011) ("[W]e conclude
that [§ 1226(c)] implicitly authorizes detention for a reasonable amount of time, after which the
authorities must make an individualized inquiry into whether detention is still necessary to fulfill
the statute's purposes of ensuring that an alien attends removal proceedings and that his release
will not pose a danger to the community"); *Ly v. Hansen,* 351 F.3d 263, 268 (6th Cir. 2003)
("[W]e hold that the [government] may detain *prima facie* removable aliens for a time
reasonably required to complete removal proceedings in a timely manner. If the process takes an
unreasonably long time, the detainee may seek relief in habeas proceedings."); *Rodriguez v.
Robbins,* 715 F.3d 1127, 1138 (9th Cir. 2013) ("[W]e conclude that, to avoid constitutional
concerns, § 1226(c)' s mandatory language must be construed to contain an implicit reasonable
time limitation, the application of which is subject to federal-court review." (quotation omitted));
*Monestime,* 704 F.Supp.2d at 458; *Scarlett,* 632 F.Supp.2d at 221–23; *Adler v. U.S. Dept. of
Homeland Sec.*, No. 09 Civ. 4093 (SAS), 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009);
*Fuller v. Gonzales,* No. 04 Civ.2039 (SRU), 2005 WL 818614, at *5–*6 (D. Conn. Apr. 8,
2005).

22

would be contrary to the Supreme Court's guidance in *Zadvydas* and *Demore*. Thus, "to avoid constitutional concerns, § 1226(c)'s mandatory language must be construed 'to contain an implicit reasonable time limitation, the application of which is subject to federal-court review.'" *Rodriguez v*, 715 F.3d at 1138 (quoting *Zadvydas*, 533 U.S. at 682).[11]

In this case, Araujo-Cortes has been detained for more than six months (as long as the petitioner in *Demore* had spent in immigration detention), and faces further detention. This is longer than the month and a half to five months of detention that the Supreme Court said was typical in *Demore*. *See* 538 U.S. at 530. And it is longer than the six-months after which detention becomes prolonged and presumptively unreasonable under *Zadvydas*. *See* 533 U.S. at 700-01. Six months' detention without an opportunity to be heard raises serious constitutional questions. *See Rodriguez*, 715 F.3d at 1136 ("When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound." (quotation omitted)).

The government argues that a six month detention is reasonable because other courts in this Circuit have upheld longer detentions. In support of that proposition, the government cites several cases: *Johnson v. Phillips*, No. 10CV480A, 2010 WL 6512350, at *6-7 (W.D.N.Y. Dec. 20, 2010) (finding 17-month detention constitutional); *Andreenko v. Holder*, No. 09 Civ. 8535 (CM)(JCF), 2010 WL 2900363, at *3-4 (S.D.N.Y. June 25, 2010) (Report & Recommendation) (13 months); *Adler*, 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009) (15 months); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 197 (W.D.N.Y. 2010) (39 months). However, contrary to the government's argument the legal analysis does not simply turn on the length of detention. Rather, "the Court must assess the duration of the detention in proper

---

[11]     The Respondents do not disagree with the general proposition that mandatory detention would violate the constitution if the detention became unreasonable; the government argues only that Araujo-Cortes' detention has not become unreasonable.

context, considering factors such as which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention." *Johnson v. Orsino*, 942 F. Supp. 2d at 409.

These factors indicate that Araujo-Cortes' continuing detention has become unreasonable. As to the first factor, there is no indication that Araujo-Cortes' attempts to secure cancellation of removal have improperly prolonged his detention: as a noncitizen with extensive family ties to the United States, Araujo-Cortes has the constitutional right to pursue relief from removal proceedings. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").

As to the second factor, the August 6, 2014 hearing scheduled before IJ Page will likely not resolve his immigration status. IJ Page has requested the records from Araujo-Cortes' previous proceedings. Araujo-Cortes needs those records, and time to review them, in order to prepare his application for cancellation or other relief from removal. Thus, Araujo-Cortes' detention may continue for a long time while he pursues relief from removal.

And as to the third factor, the government has little justification for Araujo-Cortes' continued detention without a bond hearing. Nearly five years passed between when Araujo-Cortes was released from state court, and when he was placed in immigration detention. In *Demore*, the Supreme Court held that the mandatory detention of non-citizens pursuant to § 1226(c) was justified by Congress' concern that permitting the release of criminal aliens pending their removal hearings "would lead to large numbers of deportable criminal aliens skipping their hearings and remaining at large in the United States unlawfully." 538 U.S. at 528; *see also id.* at 517-20 (discussing the evidence before Congress); *id.* at 531 (Kennedy, J., concurring) ("the

24

justification for 8 U.S.C. § 1226(c) is based upon the Government's concerns over the risks of flight and danger to the community"). But, as explained above, § 1226(c) was enacted in order to promote Congress' policy of detaining criminal aliens at the time they were released from custody. Congress intended § 1226(c) to apply to criminals taken from prison,[12] not people who are plucked out of the communities they have returned to after they served their time. *See Castaneda v. Souza*, 952 F. Supp. 2d 307, 321 (D. Mass. 2013) (opining that § 1226(c) does not apply to "any alien who has reintegrated back into his community"). As such, the evidence that Congress relied on in enacting § 1226(c)—the evidence supporting the mandatory detention of criminal aliens "when . . . released" from custody—does not support the mandatory detention of someone like Araujo-Cortes who was not placed into immigration detention "when . . . released."

Unlike those criminals who are taken into immigration detention "when . . . released," Araujo-Cortes has built a new life after his conviction. He has returned to his community and his family. With his family and community ties, he is differently situated from the criminal aliens who are taken into custody "when . . . released" considered by the Supreme Court in *Demore*.[13] Thus, Congress' concerns about whether those criminal aliens pose a flight risk or danger to the community, do not justify Araujo-Cortes' continued detention.[14] *See*

---

[12]   Even those cases that have held that § 1226(c) applies to non-citizens regardless of when they were placed in immigration detention have recognized that Congress created that section because it "wanted federal authorities to detain criminal aliens immediately upon their release from other custody." *Hosh*, 680 F.3d at 380.

[13]   The petitioner in *Demore* had been taken into immigration detention when released from state imprisonment. *See Demore*, 538 U.S. at 513 (majority opinion), 533 (O'Connor, J., concurring).

[14]   Similarly, the cases cited by the government are unpersuasive because they did not consider the prolonged detention of non-citizens like Araujo-Cortes who had returned to their communities before being placed in immigration detention. *See Johnson v. Phillips*, 2010 WL 6512350, at *6-7; *Andreenko*, 2010 WL 2900363, at *3-4; *Adler*, 2009 WL 3029328, at *2; *Luna-Aponte*, 743 F. Supp. 2d at 197.

25

*Castaneda*, 952 F. Supp. 2d at 317 ("This Court simply sees no reason why Congress [in enacting § 1226(c)] would have intended for [a non-citizen] to be picked up years after she has reintegrated back into her community and to be held without presentment before an immigration judge for a bond determination.").

Since Congress' general concerns about those criminal aliens taken into custody "when . . . released" do not justify Araujo-Cortes' detention, his prolonged detention without an individualized hearing is unreasonable. His continued detention can be justified only if he is provided with an individualized bond hearing in which the government establishes that he poses a risk of flight or danger to the community. *See Monestime*, 704 F. Supp. 2d at 458 (concluding that an individualized "hearing is particularly important when, as here, an alien is being deported for an offense committed many years prior to his detention and removal charges"). To the extent that Araujo-Cortes' convictions without sentences between 2009 and 2014 may affect Araujo-Cortes willingness to attend court sessions or indicate that he may be a danger to the community, an IJ can consider those convictions at an individualized hearing. In other words, the Constitution guarantees Araujo-Cortes the right to a hearing, not the right to release.

In sum, Araujo-Cortes' continued detention without a bond hearing is inconsistent with the due process clause of the Constitution. He is therefore entitled to an individualized hearing before an IJ to determine whether his continued detention without bond is reasonable. *See Demore*, 538 U.S. at 531 (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.").

## CONCLUSION

For the foregoing reasons, Araujo-Cortes' petition for habeas corpus is granted. The government's reliance on § 1226(c) as a reason for denying Araujo-Cortes' request for a bond hearing is in error. Congress did not intend for the statute to apply to individuals like him who are plucked out of the communities they have reintegrated into and his continued detention without an individualized hearing to determine whether he is a flight risk or a danger to the community is inconsistent with the United States Constitution.

Accordingly, Respondents are directed that an IJ must provide Petitioner with an individualized bond hearing within 7 days of the date of this Order. At the bond hearing, the IJ will consider whether conditions may be placed upon Araujo-Cortes' release that will reasonably ensure that he will pose no danger to the community and will not pose a risk of flight. If such conditions are found to exist, Araujo-Cortes shall be released from custody.

Counsel for Respondents shall report to this Court within 14 days of this order regarding compliance with this order. This report shall include notification as to the outcome of the bond hearing. If an IJ does not conduct the bond hearing as ordered, Araujo-Cortes is entitled to request a bond hearing before this court.

The Clerk of Court is directed to mark this case closed.

SO ORDERED.

Dated:       August 5, 2014
             New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge

27